ALLEN et ux. v. SPENSLEY et al.

(Circuit Court of Appeals, Seventh Circuit.    October 1, 1912.)

No. 1,868.

1. HOMESTEAD (§ 118*)—DEED—EXECUTION BY WIFE—PRESUMPTION OF KNOWLEDGE.

Where, in the absence of fraud or mistake, a wife, at the solicitation of her husband, executed a deed of the homestead, she would be conclusively presumed to have had knowledge of the contents thereof.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 203–209, 216, 217; Dec. Dig. § 118.*]

2. HOMESTEAD (§ 118*)—DEEDS—EXECUTION—SIGNATURE BY WIFE—DURESS.

Complainant, the principal managing officer of a bank, having been charged with responsibility for a large shortage of assets, informed his wife thereof on his return home on the day it was discovered, and on the following day, on demand of the directors, consented to turn over all his property, including his homestead, to aid in making good the shortage. A deed to the homestead was prepared, and complainant proceeded, with the bank's cashier to serve as notary, to his home, where complainant requested his wife to sign the deed, telling her that if she did not do so he would go to prison. She asked whether the signing would save him, to which he replied in the affirmative and led her to the desk. She attempted to sign, but could not do so until complainant steadied her hand, after which she turned to the notary and asked him if they would imprison her husband, to which he answered that he did not know but that all of the officers might be convicted. *Held*, that such facts indicated that the wife signed in order to mitigate complainant's criminal liabilities, and that the deed was not, therefore, obtained from her by duress.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 203–209, 216, 217; Dec. Dig. § 118.*]

Appeal from the Circuit Court of the United States for the Western District of Wisconsin; J. Otis Humphrey, Judge.

Bill by Philip Allen, Jr., and another against Calvert Spensley, as trustee, and Christopher L. Williams, as receiver, of the First National Bank of Mineral Point. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

This appeal is brought for reversal of a decree of the Circuit Court, on final hearing of the issues, whereby the appellants' bill of complaint filed therein is dismissed for want of equity. The relief sought in the suit was to set aside a conveyance of real property made by the appellants, as husband and wife, to the appellee trustee, in so far as it purported to convey thereunder their homestead in Wisconsin, alleging that the wife "did not consent" thereto, and that in signing the deed with her husband she "acted under the duress of her husband," the other appellant. The facts averred in the complaint and proven as well are substantially these:

The appellant Philip Allen, Jr., had long been principal managing officer of the First National Bank of Mineral Point, Wis., and in October, 1909, a bank examiner discovered a large shortage of assets covered by false entries and forged paper, for which Allen was considered responsible. At a meeting of the directors, Allen was confronted with this showing, and informed his wife thereof on his return home. On the following day, upon demand of the directors, Allen consented to turn over all of his property to aid in making good such shortage. The deed in question was thereupon prepared for execution, and Allen proceeded, with the cashier of the bank to serve as notary, to his home, and such conveyance was there signed by the husband and his wife,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appellants, and bears the certificate of the notary of acknowledgment thereof. The notary died shortly thereafter, and the only witnesses available, called to prove the circumstances of the execution, were the appellants. Both admit their signatures, but deny that the entire contents of the paper was either read or explained to the wife, and that the notary was not present during the conference between the husband and wife; that a workman in the yard was called in to witness the deed, and was informed by the husband, "My wife and I have signed some papers here, and want you to witness it; these are our signatures;" and the witness thereupon appended his signature. The wife testifies that her husband said, "You must come in now and sign these papers; Mr. Hanscom is here with them;" that she asked her husband what he wanted her to do, and he said. "Sign these papers; if you do not do it, I shall go to prison;" that she said. "Will it save you?" and he said, "Yes," and led her up to the desk; that she finally attempted to sign, but could not until her husband steadied her hand. She further states that she said to the notary, "Oh, Mr. Hanscom, they won't imprison him, will they? Will this save him?" and that he answered, "I don't know; we may all have to go yet." Both testify that the wife was laboring under excitement.

The testimony was heard before Judge Humphrey, resulting in the decree of dismissal.

Rufus B. Smith and Vroman Mason, both of Madison, Wis., for appellants.

John B. Sanborn and Chauncey E. Blake, both of Madison, Wis., for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The appellants, husband and wife, joined as plaintiffs in a suit against the appellees, as trustee and receiver, respectively, of the First National Bank of Mineral Point, to set aside the conveyance of a homestead owned by the husband, under a deed purporting to be executed by both appellants in favor of the appellee trustee for the benefit of the bank. Commenced in a state court, the case was removed to the federal court, with final hearing—Judge Humphrey presiding—on the undisputed testimony of both plaintiffs, and was dismissed for want of equity. For reversal of the decree accordingly, error is assigned (in substance) for failure of the trial court to find and hold: (1) That the deed in question was signed by the plaintiff, Edith L. Allen, when "she was entirely ignorant of its contents," purport, and intention; (2) that she was not "mentally capable of understanding" her act as a consent to transfer the homestead; and (3) that the deed "was procured and obtained" from her by duress.

The conceded facts are: That the plaintiff, Philip Allen, Jr., as manager of the above-mentioned bank, had fraudulently taken and converted large amounts from the assets of the bank, and when discovery came he offered to make restitution to the extent of his ownership of real estate, inclusive of the homestead, in value far short of the conversions; that the conveyance in question was thereupon made and delivered; that it was signed by the plaintiffs, as husband and wife, at their home, with the notary and another witness in attendance for the execution; and that it was signed by the witnesses, and the acknowledgment by the grantors certified by the notary public, with seal attached, in the prescribed form. Relief is sought against

such conveyance of the homestead, as not executed within the requirements of section 2203, Wis. Stat., as amended by chapter 45, Laws 1905—3 Wis. Stat. Supp. p. 1068—providing that no "alienation by a married man of his homestead" shall be valid "without his wife's consent, evidenced by her act of joining in the deed" or other conveyance.

[1] The contention that Mrs. Allen signed the deed in ignorance of the fact that the homestead was included therein is plainly without force for such relief—no deception appearing in obtaining the execution—either under the interpretation of this provision by the Wisconsin authorities or under the general doctrine applicable thereto, that knowledge of the contents of a written instrument must be presumed from such adoption and execution. In German Bank v. Muth, 96 Wis. 342, 71 N. W. 361, like defense was set up on the part of the wife, that a mortgage which included the homestead, purporting to be executed by the husband and wife, was signed by her in ignorance of the fact that the homestead was included therein, with the further averment and proof that "she could not read written English"; but it was there held:

"In the absence of fraud or mistake, she was conclusively presumed to know the contents of the mortgage, and was bound by the description therein contained"—citing a number of Wisconsin cases.

The doctrine thus stated was reaffirmed in Bostwick v. Mutual Life Ins. Co., 116 Wis. 392, 413, 89 N. W. 538, 92 N. W. 246, 67 L. R. A. 705, with extended review of authorities, both state and general, in support thereof.

The alleged error, for failure to find that the wife was incapable of understanding her act in the execution of the deed, is neither pressed in the argument on her behalf, nor tenable under the testimony. While it does appear that she was in distress, both over the defalcations on the part of her husband (of which he had informed her the night before) and over his liabilities thereunder, as stated when the deed was presented for execution, there is no testimony in support of the averment that she was not "mentally capable of understanding the act" of conveyance.

[2] For relief against the conveyance, however, the ultimate contention is that the evidence establishes the charge that Mrs. Allen "did not consent to the conveyance"; that (in substance) the circumstances and urgency of the call upon her for its execution rendered her "temporarily unable to give a valid consent," and constituted duress, as defined in Wisconsin cases and other authorities called to our attention. In other words, the issue thereunder was whether the circumstances and means used were "such as to prevent the free exercise of her will power." Price v. Bank of Poynette, 144 Wis. 190, 199, 128 N. W. 895, 898, and cases cited. The trial judge heard the testimony of Mrs. Allen, and his general finding of want of equity in the complaint is plainly adverse to such contention; in effect, it amounts to a finding of ultimate fact thereupon that she was not deprived of her will power, but signed the deed voluntarily in the exercise thereof. Prepared under Mr. Allen's offer and direction, the

deed was brought by him to their home for joint execution. His explanations to Mrs. Allen were made with no other witness present; but the testimony of both concurs in all material particulars. Each impresses us to be a simple and candid recital of the pathetic errand and its accomplishment, with the husband contrite and in no respect domineering, and no expression of dissent on the part of the wife. It may reasonably be implied that the wife would not be willing, at the outset, to surrender their homestead for the purpose alone of partial mitigation of the bank's loss in the defalcations; but her understanding of the object of the conveyance, by way of mitigation of her husband's criminal liabilities therein, is distinctly expressed in her testimony as the moving cause of her consent. Neither that inducement, nor her agitation (not unnatural) in executing the deed, furnishes just ground, in our opinion, to set aside the above-mentioned finding of fact, that her consent was voluntarily given in signing the deed.

The conveyance, therefore, was not voidable under the testimony, and the decree accordingly of the Circuit Court is affirmed.